I apologize Mr. Rodriguez for the interruption. Please do begin. Thank you again, Your Honor. I represent Mr. McLaurin on appeal. I was not trial counsel below. Mr. McLaurin pled guilty to two counts. One was conspiracy to distribute a certain amount of narcotics and one of actual possession of some certain amount of narcotics. We've raised two issues before this court that were also argued below by the trial counsel. The first thing I'd like to point out is that the trial counsel adequately preserved both arguments. Not only did he make the arguments to the district court but he filed objections in writing with the district court and in addition to that he adequately objected to the PSI's recommendations as to the two issues we raised on appeal. Number one being attribution of the entire total amount of drugs to him as well as the the two-level enhancement for maintaining premises for the purposes of distribution of drugs. Let me jump in there since you're talking about preserving objections in particular on issue one to the PSI. You objected to PSI paragraph thirty-one which is the base offense level calculation but you did not object to anything in paragraphs fourteen through twenty-four which are the facts of Mr. McLaurin's offense conduct. Why shouldn't we read your objection as conceding the facts in the offense conduct section? That was actually raised by the government in its brief. I could only point out that the defense counsel below did not object to those paragraphs. However, in paragraph thirty-one is a concise rendition of all the drug amounts mentioned in those previous paragraphs. It's our position that the government may be exalting form over substance when in fact the defense counsel made clear under his objection to thirty-one that we're not responsible for all these drug amounts. A lot of these paragraphs in the PSI deal with the activities of the co-defendants in which Mr. McLaurin was not present. The fact that one of the defendants was arrested in a car, how is Mr. McLaurin going to object to that factually? Another one was search warrants executed in two other residences where Mr. McLaurin wasn't present. How is Mr. McLaurin going to object to that? The point is he focused on paragraph thirty-one which lists in the PSI the actual drug amounts as to each of those arrests mentioned in paragraphs fourteen through twenty-two. Again, our position is that those were adequately preserved and he made that specific argument in his objections in Docket Entry 167, pages twenty-six through twenty-eight. What about the music videos that your client participated in that promoted the drug sales, not only at the location where he was found, but at the other locations? Well, my understanding from the video that was produced, that was in evidence, that was actually not shown to the trial district court judge but was argued about, was a rap video which depicted drug paraphernalia in the background and that the rap music was, you could be considered as something that promoted drugs. But again, that's not something that would attribute to Mr. McLaurin the total amount of drugs and I think . . . Unless there was evidence that Mr. McLaurin was aware that these drugs were being sold at other locations and that the videos that he was participating in were promoting those sales. Correct. And the government had the opportunity, and I think this is extremely important at the sentencing hearing, to present evidence and not just argument, which is what they did. They could have presented an agent, they could have presented any other pieces of evidence to support their burden of preponderance of the evidence, to support both of these, both the total amount of the drugs and the premises argument that was made before. Is it your client's position that these videos did not, in fact, support or promote sale of the drugs at all of the locations? Perhaps at the location where it was filmed, which was at the 50th Avenue South, where Mr. McLaurin was subsequently arrested and for which he has no objection to the attribution of the drugs in that particular location. He didn't object in the district court and he doesn't raise that on appeal. He adequately supported the fact that he was guilty of those amounts of drugs at that location, which is where the film was located. There were other films located in other places in which Mr. McLaurin was not present and those had to do with the co-defendants. I think it's important to point out that the defendant was never present at those other stash houses. He never visited those stash houses. He never talked about or knew about it. He, in fact, was arrested in January of 22 and it could be adequately argued that he didn't even remain part of the conspiracy after that. All of these offenses occurred thereafter. Your client pleaded guilty to conspiring to distribute 500 grams or more of meth, but there was only about 10 grams of meth seized from the 50th Avenue location. What would be your explanation of where the additional weight came from, if not the three other houses listed in the PSI? Yes, what defense counsel noted at the time of the plea colloquy was that he was not going to object to those amounts that would satisfy the minimum mandatories. I understand that, but if he's pleading guilty and there were only 10 grams of meth seized from the 50th Avenue location, what would be the motivation for pleading guilty for conspiring to distribute 500 grams or more of meth? Because there was supposedly an agreement of the defendants that that was going to be the goal of this BTE organization. What defense counsel pointed out very specifically in the plea agreement was he wanted to preserve his argument as to relevant conduct, which is allowed under the guidelines and which I think the district court seemed to indicate in its sentencing hearing that it was equating the plea of guilty to conspiracy scope with the scope of violently undertaking a criminal activity and the guidelines comments clearly indicate that they're not the same thing. They are not the same thing, and that's what defense counsel was trying to . . . Bless you.  Thank you. Go ahead. That's what defense counsel was trying to explain when he entered his plea before the court, unobjected to by the government, unobjected to by anyone. That was the reason he was doing this. He was not going to contest the conspiracy charge, but he was not going to cede the issue of the amount of drugs or the premises issue. That is the best explanation I can give to the court, but I think that one of the things that this court should take into account, and I return to it because it's extremely important, is that it's the government's burden at the time of sentencing to justify any of these enhancements. The government was not stopped from doing it. The government was not told you cannot present evidence. The government could have called an agent and said, hey, here's the evidence, here's the testimony, here are the videos, here's more evidence that we have. What the government actually did was admit that each of the defendants in this case had their own customer base. That indicates, and that would be on page 30 of docket entry 225, what that indicates is that the government itself is indicating that each of the defendants had their own sphere, so to speak, within this organization. He also admitted, the government did, in that same page, that Mr. McLaurin was not in any way the leader in this organization, which indicates he didn't have his tentacles spread out through all these stash houses. Did he plead guilty to conspiring with certain other specifically named individuals? Well, the count does. The count won. Were some of those individuals the ones who sold drugs at the other locations? Yes. So I guess I'm not understanding your argument then. What is he saying that he didn't know? My argument is as follows, that just because he entered a plea to the conspiracy, which is what the district court obviously came down on, just because he entered a plea to count one of the conspiracy does not foreclose his ability to challenge the total amount of drugs attributed to him. That's true, but if the reason that he's challenging it is he's saying he didn't know these other people were distributing drugs at other locations, then that sort of begs the question, what exactly did he agree to in the conspiracy? Because as you know, one of the elements of a conspiracy is an agreement, right? So what was he saying he agreed to as part of that conspiracy? Well, I think that's the issue here, is that count one does not delineate the stash houses, the locations of the stash houses. None of those issues are alleged in count one. What about the factual proffer? The factual proffer is where we have this issue concerning why he did not object to the issues of fact raised in the PSI, when he did in fact, excuse me, objected to paragraph 31, which lists all the drugs per the stash houses. So are we going to say that that was insufficient, that he did not bring it to the court's attention? The court actually entertained an argument on it. It wasn't as if the court was blindsided and didn't know what was going on, and certainly the government didn't know what the issue was, and that was the entire import of this objection. Is the argument that he thought his co-conspirators were only selling drugs out of the same house he was selling drugs out of? I'm just trying to understand what the argument is. Because he didn't have, there was no proof that he had knowledge of the other stash houses. So that's what I'm asking you. Is his argument that the people that he pled guilty to conspiring with, to agreeing with, to engage in this drug distribution ring, that they, to his knowledge, they only distributed drugs out of the same house he was distributing drugs out of. Is that what your argument is? I don't believe that that is necessarily accurate. I think that they were involved in drug dealing, but the question becomes whether or not he was aware that these other stash houses were being used by other defendants. Here's where I'm having a little bit of difficulty understanding. He pled guilty to a conspiracy, which means he pled guilty to agreeing with the other people named in the indictment to distribute drugs, right? Would you agree with that? Yes. Okay. And so then the question becomes, he knew that he had an agreement with these other people to distribute drugs, that they were involved in that business. If they weren't involved in that business at the same location that he was, then he had to have been agreeing that he knew that they were involved in the distribution of drugs at other locations, right? Or what am I missing here? Well, it could have been other locations or other hand-to-hand sales or it could have been anywhere else, but the point is there had to have been specific proof which the government could have presented where the defendant had some kind of knowledge that these other stash houses were being used by the co-defendants. Otherwise, you're going to attribute drugs to him that he had no involvement with. I see my time has expired, but I hope that that answers your question. I have one question about the maintaining the premises enhancement, and my question is directed to your briefing. I understand your argument. You say that we should not be relying on the co-conspirator conduct to support the enhancement. I want you to presume, and this is just, I want you to presume that we disagree with you and say that we are going to rely on the co-conspirator conduct. This is what I can't tell from your briefing. Are you then conceding that the co-conspirator's actions support the enhancement? I didn't see any argument to that point. You said don't rely on co-conspirators, but if we rely on co-conspirators, do you concede that the enhancement is proper? I believe in my brief when I mentioned the Holmes case that even under Holmes, which is the unpublished opinion, not adopted by any published opinion by this Court, I said that they still had to establish the fact that it was reasonably foreseeable for the defendant to know that these other stash houses were being used by the co-defendants. I believe that was in the brief in reference to Holmes. Thank you very much. All right. Thank you, Mr. Rodriguez. You've reserved two minutes. We'll hear next from the United States. Thank you, Your Honors. May it please the Court, Julia Capusta for the United States. The District Court did not err in calculating McLaurin's drug quantity or in applying the premises enhancement based on either his own conduct or the reasonably foreseeable conduct of his co-conspirators. I'd like to start out by responding to a few statements about the record for the drug quantity before turning to the premises enhancement. McLaurin did not object to the offense conduct facts in his PSR, paragraphs 14 through 24. In paragraph 14, he admitted not only that he conspired with his co-defendants to sell these three types of drugs, fentanyl, methamphetamine, and cocaine, but he admitted that he was part of the conspiracy through April 2023 and he admitted that they in fact sold drugs from these stash houses in St. Petersburg. The District Court did not clearly err in finding that it was reasonably foreseeable to him that his co-defendants sold drugs from the other stash houses while he was not physically present. What is there to show that he knew that there were other stash houses? One, his admission that that was part of the object of the conspiracy. He admitted again, the last sentence of paragraph 14, he admitted not only that he conspired with these members to sell these drugs, but they in fact sold them from these locations, the listed locations in paragraph 14 PSR, the four houses. He also was in these, as you mentioned, the music videos that were promoting these drug sales. He in fact was filmed at the 50th Avenue location, but the drug sales or the music videos were also filmed at the 29th Street location and also he makes the point that he was arrested and he was arrested after the January 27th search of the 50th Avenue location, but he was released three weeks later. He was released in early March and none of the other searches of the other houses occurred during the time in which he was in custody and then once again he admitted that he was part of this conspiracy through April 2023. And this issue of the fact that at sentencing the defendant objected to paragraph 31 but did not object to 14 through 24, which is where the facts were, this came up at sentencing and the district court said the facts in the PSI state that, or I'm paraphrasing, the facts in the PSI state that McLaurin conspired with BTE members to distribute narcotics from the three other non-50th Avenue locations and in response to that Mr. McLaurin's counsel stated, I don't disagree with your Honor's assessment of it. No, I don't have a response, Your Honor. I don't have a dispute with what you just said. So this was, I think your opposing counsel has argued that objecting to paragraph 31 is sufficient. There was no need to object to 14 through 24, but this was actually squarely confronted at sentencing that this was an issue. Yes, his attorney at sentencing never in fact disagreed with the facts as they were represented in the PSR, even at sentencing, even with his objection to the drug quantity. He just disagreed that he should be held accountable for those drugs, but he fully admitted that those facts were accurate and once again the court on pages 1920 of the sentencing transcript in fact said that the offense conduct facts, the facts listed in the PSR adequately showed that this was beyond reasonably foreseeable to him, that his co-conspirators that to which he agreed to conspire with to sell these three types of drugs were selling those same types of drugs at other locations. So he is challenging the reasonably foreseeable piece. What are the facts that best show that Mr. McLaurin's co-conspirators other drug activities were reasonably foreseeable? Again, that at these houses, the drugs that were found at these houses were the three drugs, the same types of drugs that he had agreed to conspire, methamphetamine, fentanyl, and cocaine, and once again there were multiple music videos and while he may not be in all the music videos, it is reasonably foreseeable to him that like they were filming these videos. It is reasonable to infer that he was aware of these as other music videos given the fact that he was part of this BTE organization and one of the things that the BTE organization did was film these music videos to promote their drug dealing business. So I would say given his association with them, his knowledge that they are selling drugs, the fact that he agreed with these specific individuals to sell these types of drugs, it was reasonably foreseeable that they would be selling drugs even at times and even at locations that he was not present. And they were the same drugs, sorry, same drugs in the music video that he was in that were being sold at other locations, correct? I'm not sure that the facts that specify which drugs were shown in the music videos, but there were drugs, well I believe one of the ones at the 29th Street location referred to crack cocaine, but other than that, I'm not, the music videos, I'm not sure which drugs were shown. So I'd like to turn your attention for a moment to the premises enhancement and the way I see it, there are two issues that we need to consider. The first one is whether using the relevant conduct guideline, a defendant can be held responsible under that enhancement or somebody else in the conspiracy having maintained a premises. That's a legal question. So at some point I'd like you to address that. The second and particularly given the wording of this guideline, which is subsection B-12 applies to a defendant who knowingly maintains a premises, blah, blah, blah, among the factors the court should consider in determining whether the defendant maintained the premises or whether the defendant held a possessory interest in and the extent to which the defendant controlled access to or activities at the premises, blah, blah, blah. The second issue is whether in the absence of the relevant conduct guideline applying to the premises enhancement guideline, the facts exist to apply this particular enhancement here. Yes, Your Honor. I'll start with your second issue first. The district court did not clearly err in that McLaurin himself maintained the 50th Avenue house for the purpose of distributing drugs. He was not a casual visitor at this house. He frequented the house for the purpose of distributing drugs and his drug sales were not incidental or collateral to his presence there. Let me ask you a question though because he said he didn't have keys to the premises. Was he the only one who was present who was selling drugs when he was selling drugs? So, Your Honor, on the day that the agents arrived to execute the search warrant, he was one of only two members present at the house and he was the one who in fact sold the drugs to the confidential source immediately before that warrant was executed. So that shows a great level of control over access to the premises and of the activities occurring at the premises. Well, does it though? I mean, if the other person was the one with the keys to the premises and he couldn't access the premises without somebody else there to open it up for him? Yes, Your Honor, and we don't know. The record does not show who in fact has a possessory interest in this house. Yes, Your Honor, but we are not relying on possessory interest to support the enhancement. It's just one factor that this court considers when considering the totality of the circumstances decide whether. True, but I don't know that there necessarily needed to be a possessory interest, right? If he had, let's say that he had the keys to the property and he was the one who opened it up and made sure that somebody was there and available to sell drugs and whatever, I think it would be pretty clear in that case that the enhancement would factually apply, but we don't have that here and so that's why I'm asking you this question. Yes, Your Honor, and control need not be exclusive and we do not, I agree, have any evidence that McLaurin himself had keys, that he in fact had keys to the house, but control be... Is there any evidence that he could access the house by himself? No, the record does not show that, Your Honor. So, isn't that a little bit problematic? If we're traveling under the defendant himself had to have maintained the premises. Yes, Your Honor, but we we still argue that based on the fact that he invited customers to this house to sell drugs, exhibited a level of control over access to the house and the fact that he in fact accessed those drugs at the house and had access to the drugs and could use those drugs to sell to his customers, once again showed a level of control over access to the house. Wouldn't that make any person who's selling drugs in a house, regardless of how small their participation is, responsible for the premises enhancement? When it occurs regularly over a long period of time and he in fact uses this as his drug distribution base, yes, I would argue that does hold him accountable for maintaining a premises and I'd like to point to statements made by his counsel at the sentencing hearing. His counsel said that he was at the 50th Avenue house a lot. He said he had access to the drugs at that house and that he in fact sold drugs from that house. In fact, in his counsel's own words, McLaurin manned the house. These statements, in addition to the admissions that McLaurin made by failing to object to the offense conduct facts, shows there was not clear error for the court to find that he himself maintained the 50th Avenue house. Suppose we disagree with you. Suppose we say the record does not support the fact that the defendant maintained the 50th Avenue house. You're still traveling under the co-conspirators' control of the other locations, correct? Yes, Your Honor. Can you give me your best factual support for what's in the record showing that the co-conspirators maintained one of the other premises? I guess I would argue the best evidence is Hagebuck, at the 16th Avenue location. He was present there while drugs were being sold and then he was also present on the day it was searched by the agents. He was watching on video camera, seeing their arrival, and as he observed their arrival, he tried to dispose of a substance down the toilet. Again, that shows some level of control over the house. That is in fact monitoring who was arriving to the house and that he has control over the substances in the house and that he is disposing of it before the agents arrive to search the house. But there's no evidence in the record supporting that any of the other co-conspirators owned any of the other houses? No, Your Honor, but I would argue that it's undisputed that these houses all were in fact maintained by BTE, the conspiracy. And is there any evidence in the record that any of the co-conspirators had keys to any of the other locations? No, Your Honor. So you're traveling under both for McLaurin and for the co-conspirators maintaining the premises enhancement, you're traveling under the fact that they were repeat visitors who are exercising control over the drugs in the house? In the fact that these were in fact BTE trap houses and McLaurin was himself a member of BTE. So they were maintained, if not by him or his co-defendants, by another individual in this organization with him. All right, so let me turn then to the legal question of whether the relevant conduct guideline applies to the premises enhancement. Yes, Your Honor. The use of the defendant in the premises enhancement on its own is not enough to displace the general relevant conduct principles, including the reasonably foreseeable analysis set forth in subsection A1B to the relevant conduct guideline as a panel of this court already decided in Holmes. That's true, but it was unpublished and it's not binding. Yes, Your Honor, but Holmes relied on two published decisions from this court, McLean and Cook. McLean had this court considered whether another guideline, guideline 3B1.4 for use of a minor's committed an offense, which also is worded in the language the defendant, whether that could be applied based on the reasonably foreseeable conduct of a defendant's co-conspirator. In McLean, this court decided that it could be applied based on the reasonably foreseeable conduct. Necessary to that holding was a conclusion that use of the term the defendant is not enough to specify, to displace the relevant conduct principles set forth in subsection A1B of the relevant conduct guideline. And Cook also adds to that analysis, and Cook, this court considered guideline 3C1.2 and had to decide whether it could be applied based on the reasonably foreseeable conduct. We said it couldn't. No, but it did not rely on the fact that it was worded the defendant. This court relied on the fact that that guideline contained an application note, application note 5, which explicitly stated that under that specific guideline, the defendant was accountable only for his own conduct, not which he aided, abetted, counseled, procured, et cetera, the conduct that is in line with that described in subsection A1A of the relevant conduct guideline. We would argue that those two cases together, Cook and McLean, compel the conclusion that use of the defendant in the premises enhancement is not enough to displace the relevant conduct principles, especially considering that there is no application note like the one in Cook establishing the exception to the default relevant conduct principles. Unless your honors have other questions, we also argue one point. We did have an agent present at sentencing, and we offered to put on a testimony. The district court decided that it was not necessary, so we'd argue if this court disagrees and remands this case, that we'd have the opportunity to put on evidence on remand. We'd ask that you affirm his sentence. Thank you, your honors. Thank you. All right. Mr. Rodriguez, you have two minutes. Very briefly, your honor. On the issue of premises, I would like to point out that the court below found that he did not have any type of possessory interest or that he owned the property at 50th Avenue South, so that issue is put to the side. He didn't have control in the sense that he didn't say who came in, what was sold, and what was to be sold. Now, the government cites to various cases in support of this argument, but all of those cases are easily distinguishable. The Rodriguez case, where it was the defendant's house where he was packaging drugs. In the Hopper decision, the defendant distributed meth from his home. In the Flores-Olega case, the defendant sold drugs at his home. Homes is an imperfect vehicle for this court to use. In homes, the facts show that the defendants were selling drugs from one of the residences where the defendant was present. Homes itself is self-contradictory on that point because why have any need to look toward co-defendant activity when the defendant is present? Of course he's present. Of course he should be attributed to those drugs. But your client was present at the 50th Avenue location. And he doesn't challenge the drugs on that location. I understand, but if the premises enhancement, if that's your theory, then the premises enhancement would apply for that location alone without even looking at the other locations. Well, there's no proof, again, of control, and I think that's the issue here. The defendant, that home was open. In other words, the defendant didn't have to be present for drugs to be sold from that home. So if we're talking about control of activities, which is how the district court came down eventually on it . . . Mr. Rodriguez, what did he admit to when he pled guilty with respect to the stash houses? He pled guilty to the conspiracy. That's correct. And everything that was alleged in count one? It was alleged in count one, but there was no allegation, obviously, of the stash houses in the . . . Well, I understand it, but everything that was in count one was admitted. The conspiracy was admitted and . . . Aren't the stash houses and everything else part of count one? Well, the facts have to be established by the government. I'm talking about the charge. Yes. The charge was there. The charge was there and he pled guilty to it.  Yes. Thank you. Thank you, Your Honor. All right. Thank you, counsel.